**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| DEAN FOODS COMPANY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 10-mc-67 |
| | ) | |
| PRAIRIE FARMS DAIRY, INC., | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Movant Dean Foods Company's (Dean Foods) Motion to Compel Compliance with Subpoena Duces Tecum (d/e 3) (Motion).  Dean Foods issued a Subpoena Duces Tecum (Subpoena) to Respondent Prairie Farms Dairy, Inc. (Prairie Farms) in connection with an ongoing civil antitrust action in the United States District Court for the Eastern District of Wisconsin.  United States v. Dean Foods Company, E.D.WI. Case No. 10-cv-00059 (Antitrust Action).  Prairie Farms is not a party to the Antitrust Action.  Prairie Farms objects to producing any of the documents requested in the Subpoena.  Dean Foods brings the Motion to compel Prairie Farms to produce the documents.  For the reasons set forth below, the Motion is allowed in part and denied in part.

<u>BACKGROUND</u>

Dean Foods is the largest producer and supplier of milk in the United States.  Prairie Farms processes and distributes milk in Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, and Wisconsin.  Prairie Farms is headquartered in Carlinville, Illinois.  <u>Memorandum of Law in Opposition to Motion to Compel Compliance with Subpoena Duces Tecum (d/e 7) (Prairie Farms Memorandum)</u>, attached <u>Declaration of Ed Mullins</u>, ¶ 2.

On April 1, 2009, Dean Foods acquired two dairy processing plants in Wisconsin (the Acquisition) from Foremost Farms USA (Foremost).  On January 22, 2010, the United States Department of Justice (United States or DOJ) and the States of Illinois, Wisconsin, and Michigan (collectively the Antitrust Plaintiffs) brought the Antitrust Action against Dean Foods alleging that the Acquisition violated § 7 of the Clayton Act, 15 U.S.C. § 18, because the Acquisition will substantially lessen competition. <u>Memorandum of Law in Support of Motion to Compel Compliance with Subpoena Duces Tecum (d/e 2) (Dean Foods Memorandum)</u>, <u>Declaration of Sean Pugh</u>, Exhibit A, <u>Complaint</u>, ¶¶ 54-55. The Antitrust Plaintiffs allege that the Acquisition will reduce competition in the market for selling milk to schools in Wisconsin and the Upper Peninsula of Michigan (UP), and in the market for selling fluid milk in Wisconsin, the UP, and a nine-County

Chicago metropolitan area in northeastern Illinois (Metropolitan Chicago) (Wisconsin, the UP, and Metropolitan Chicago are collectively referred to as the Market). Fluid milk is raw milk processed for human consumption. The Antitrust Plaintiffs seek an injunction to require Dean Foods to divest itself of the two dairy processing plants acquired in the Acquisition. Id., ¶ 56.

In July 2009, before filing the Antitrust Action, the United States issued Civil Investigative Demands (CIDs) to several competitors, including Prairie Farms. Prairie Farms responded to the CID issued to it by providing information to the United States about its plants in Peoria, Illinois, Rockford, Illinois, and Dubuque, Iowa. Prairie Farms sold milk in Metropolitan Chicago from the Peoria and Rockford plants. Prairie Farms sold milk in Wisconsin from the Dubuque facility. Mullins Declaration, ¶¶ 9-10.[1]

Prairie Farms delivers milk by truck. Delivery routes are designed so that the driver can deliver the milk and return to the plant in one day. Prairie Farms does not transport milk longer distances because fuel costs and the costs associated with drivers staying on the road overnight are

---

[1] In June 2, 2009, Prairie Farms bought the Dubuque facility from a dairy cooperative called Swiss Valley. Prairie Farms Memorandum, Exhibit C, Department of Justice Interview Summary with Ed Mullins, at 186. The Dubuque facility is sometimes referred to as the Swiss Valley facility.

prohibitive.  Mullins Declaration, ¶¶ 3-6.  As a result, Prairie Farms generally does not deliver milk more than 200 miles from any given plant that it operates.  Mullins Declaration, ¶ 7.  This distance limitation seems to be common in the industry.  The Antitrust Plaintiffs allege that more than ninety percent of the milk sold to customers in Wisconsin and the UP travels less than one hundred fifty miles from the plant in which it was processed.  Complaint, ¶ 15.

Prairie Farms also has plants in Fort Wayne, Indiana, Battle Creek, Michigan, and Iowa City, Iowa.  The Fort Wayne plant is less than 200 miles from Metropolitan Chicago.  Prairie Farms ships milk from the Fort Wayne plant to one customer in Metropolitan Chicago, in Lemont, Illinois, 166 miles away.  Prairie Farms can make the delivery and return trip in one day because an entire truckload is delivered to one customer at one location.  The driver does not have to make multiple stops.  The driver delivers a full truck trailer and picks up an empty trailer to return.  The customer unloads the truck and has it ready for the driver to pick up at the next delivery.  Mullins Declaration, ¶ 11.  Prairie Farms makes no other deliveries to Metropolitan Chicago from Fort Wayne and does not plan to do so because of the distance and difficulties in making multiple delivery stops in and around Chicago.  Id.  The Fort Wayne plant does not sell milk to anyone in Wisconsin or the UP.

The Battle Creek plant sells milk to one customer in the UP.  The Battle Creek plant loses money on the sales to that customer and is not planning to sell to any other customers in the UP.  Mullins Declaration, ¶ 16.  The Battle Creek plant does not sell milk to anyone in Metropolitan Chicago or Wisconsin.  The Iowa City plant sells milk to customers in the Quad Cities, but does not sell milk to any customer in the Market.  Prairie Farms has no plans to distribute milk to the Market from the Iowa City plant.  Mullins Declaration, ¶ 10.

After the Antitrust Action was filed, the United States provided Dean Foods with the information that Prairie Farms provided in response to the CID.  Prairie Farms Memorandum, attached Declaration of Teresa Bonder, ¶ 8 and accompanying documents referenced therein.  On August 17, 2010, Dean Foods issued the Subpoena to Prairie Farms.  Dean Foods Memorandum, Pugh Declaration, Exhibit B, Subpoena.  Dean Foods also issued deposition subpoenas for three of Prairie Farms' employees.  Prairie Farms indicates that these employees will comply with those subpoenas and make themselves available to be deposed.  The Motion does not concern the three deposition subpoenas.

The Subpoena ordered Prairie Farms to produce confidential information about its business operations in all thirteen states in which Prairie Farms operates.   The Subpoena sought documents covering the

time period from January 1, 2007, to the present. Counsel for Prairie Farms and Dean Foods corresponded regarding the request, but did not reach an agreement on the scope of the information to be provided. On December 1, 2010, Prairie Farms formally objected to the Subpoena's requests. Dean Foods Memorandum, Pugh Declaration, Exhibit F, December 1, 2010, letter from Teresa T. Bonder to Sean P. Pugh (Objections Letter). Dean Foods responded with this Motion.

## ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party. Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. The rule gives the district courts broad discretion in matters relating to discovery. See Brown-Bey v. United States, 720 F.2d 467, 470-471 (7th Cir.1983); Eggleston v. Chicago Journeymen Plumbers' Local Union 130, 657 F.2d 890, 902 (7th Cir.1981); see also, Indianapolis Colts v. Mayor and City Council of Baltimore, 775 F.2d 177, 183 (7th Cir.1985) (on review, courts of appeal will only reverse a decision of a district court relating to discovery upon a clear showing of an abuse of discretion). "[I]f there is an objection the discovery goes beyond material relevant to the parties' claims or defenses, the Court would

become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes, 2000 Amendment.

This case involves a subpoena to a non-party. In the context of a subpoena to a non-party, the party issuing the subpoena has the burden to "take reasonable steps to avoid imposing undue burden or expense" on the party subject to the subpoena." The Court must modify or quash a subpoena if it subjects a party to an undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv).

The case also seeks confidential commercial information. In such situations, the party seeking discovery from a non-party has the burden to show that the information is sufficiently relevant and necessary to its case to outweigh the harm disclosure would cause to the party from which the information is sought. Greater Rockford Energy and Technology Corp. v. Shell Oil Co., 138 F.R.D. 530, 534 (C.D.Ill. 1991). The Court, further, may modify or quash a subpoena to protect the party subject to the subpoena if the subpoena requires the production of confidential commercial

information.  Fed. R. Civ. P. 45(c)(3)(B)(I).  In light of these considerations, the Court addresses each of the requests in the Subpoena.[2]

The first documents request states:

Request No. 1

> 1.     Documents sufficient to show the location of each Milk Processing Plant you operate in the States of Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota and Wisconsin, and the type of filling equipment used at each plant.

Prairie Farms objects on relevance grounds and because of the undue burden on it to provide any information related to any plant other than the Peoria, Rockford, and Dubuque facilities.  Prairie Farms argues that the plants in other areas of the country have no relevance to the sale of fluid milk or school milk in the Market.  As explained above, the labor and transportation costs are too high to justify transporting milk more than 150 to 200 miles.  As a result, information about plants farther away from the Market are not relevant to evaluating the supply of milk in the Market. Prairie Farms also presents evidence that plants other than those in Rockford, Peoria and Dubuque are not likely to affect the supply of milk in the Market, and so, are not relevant.

Dean Foods argues that information about the Prairie Farms plants across the country is relevant because Prairie Farms might be able to

_____

[2]The Subpoena uses second person pronouns to refer to Prairie Farms.

deliver milk from those plants to the Market in the future, "Prairie Farms could reconfigure the manner in which it delivers fluid milk to customers from its network of plants in these states in order to increase available capacity at plants closer to Plaintiffs' alleged geographic market." <u>Dean Memorandum</u>, at 5. Dean Foods further argues that it needs information about the plants across the country, "to understand what effect the competitive churn in these States has on the capacity that may be available for serving Plaintiffs' alleged geographic market." <u>Id.</u> Finally Dean Foods argues that it needs information about milk customers from other states to determine, "the competitive dynamic affecting processors located in the surrounding area and what it suggests about the capacity generally available for serving the alleged geographic market." <u>Id.</u>, at 6.

Dean Foods is speculating. Dean Foods has the burden to show that the evidence is relevant because it is seeking confidential commercial information from a non-party. Speculation is not enough. Dean Foods has not presented any evidence to indicate that there is any likelihood that Prairie Farms or other producers will deliver of milk to the Market from distant plants. The evidence, rather, shows that milk will not be shipped long distances. The Court, therefore, will not require Prairie Farms to produce information about distant plants. Prairie Farms, further presents evidence that it intends to compete in the Market from only the Rockford,

Peoria, and Dubuque plants. Dean Foods makes no showing to the contrary. The Court, thus, denies Dean Foods motion to compel production of the information requested with respect to Prairie Farms plants other than the plants in Peoria, Rockford, and Dubuque.

With respect to the plants in Peoria, Rockford, and Dubuque, Prairie Farms has already provided the information requested in Request No. 1, except the specific type of filling equipment. Prairie Farms indicated in its Objection that it would provide a list of the filling equipment used in its Rockford, Dubuque, and Peoria plants. Objection Letter, at 4. Prairie Farms is directed to do so. The Motion with respect to Request No. 1 is otherwise denied.

Request No. 2

2. Documents sufficient to show for each Milk Processing Plant identified in response to Request 1 and separately by year, capacity, capacity utilization, and gallons produced, and provide all documents discussing plans or proposals, whether formal or informal, to expand production or capacity at these plants, or identifying or discussing any constraints that may exist on your ability to increase the fluid milk processing capacity or capacity utilization of any of these plants.

For the reasons set forth in the analysis of Request No. 1, the Court denies Dean Foods' request to compel production of documents related to plants other than the Rockford, Peoria, and Dubuque plants. With respect to those plants, Prairie Farms objects because it already provided

production and capacity information in response to the CID.  The Court, therefore, directs Prairie Farms to produce information that updates the responsive information provided pursuant to the CID from the date of the response to the CID to December 31, 2010.  The Court finds that such a response is sufficient for Dean Foods without being unduly burdensome to Prairie Farms.  The Motion with respect to Request No. 2 is otherwise denied.

Request No. 3

3.     Documents sufficient to show, by year, the location of all branches, cross docks or other distribution points associated with any of the Milk Processing Plants identified in response to Request 1, and the capacity and capacity utilization of each such distribution location.

For the reasons set forth in the analysis of Request No. 1, the Court denies Dean Foods' request to compel production of documents related to plants other than the Rockford, Peoria, and Dubuque plants.  With respect to those three plants, Prairie Farms indicated in its objections that it would be willing to provide a list of branches, cross docks, or other distribution points associate with those plants.  Objection Letter, at 5.  Prairie Farms is directed to do so.  The Court finds that such a response is sufficient for Dean Foods without being unduly burdensome to Prairie Farms.  The Motion with respect to Request No. 3 is otherwise denied.

Request No. 4

      4.    Documents sufficient to show, by year, the name and delivery location of all customers of any type, including without limitation, retailers, independent distributors, food service companies, school districts, and other institutions, wherever located, to whom you have sold fluid milk processed at each of the plants identified in response to Request 1 and, for each customer, the monthly volumes of such fluid milk sales by UPC.

For the reasons set forth in the analysis of Request No. 1, the Court denies Dean Foods' request to compel production of documents related to plants other than the Rockford, Peoria, and Dubuque plants. With respect to those three plants, Dean Foods has not presented evidence to explain a need for the name and location of all customers of Prairie Farms. Prairie Farms, therefore, is directed to produce documents showing the total number of each type of customer served by each of the three plants and the number of each type of customer that is within the Market. Prairie Farms is also directed to provide documents showing the volume of sales to each type of customer from January 1, 2007, to December 31, 2010. Prairie Farms, however, is not required to provide any information that has already been provided in response to the CID. The Court finds that such a response is sufficient for Dean Foods without being unduly burdensome to Prairie Farms. The Motion with respect to Request No. 4 is otherwise denied.

<u>Request No. 5</u>

5.　　Documents sufficient to show, by year, the name and location of any other potential fluid milk customers of any type in Wisconsin, the Upper Peninsula of Michigan, and Northern Illinois whose business you have sought, whether through formal bids or offers or through informal sales contacts, or whose business you have considered seeking at any time during the relevant period.

For the reasons set forth in the analysis of Request No. 1, the Court denies Dean Foods' request to compel production of documents related to plants other than the Rockford, Peoria, and Dubuque plants. With respect to those three plants, Prairie Farms indicates that it has already provided the requested information in response to the CID. <u>Objection Letter</u>, at 6. The Court, therefore, directs Prairie Farms to produce information that updates the responsive information provided to the CID to cover the time from the date of the response to the CID to December 31, 2010. The Court finds that such a response is sufficient for Dean Foods without being unduly burdensome to Prairie Farms. The Motion with respect to Request No. 5 is otherwise denied.

<u>Request No. 6</u>

6.　　All documents that identify, describe, analyze or discuss plans or proposals, whether formal or informal, you have considered during the relevant period for increasing sales in territories your company already services in Wisconsin, the Upper Peninsula of Michigan, and Northern Illinois or expanding sales into new territories in these areas, including

any analysis of the projected costs and revenues potentially associated with such plans or proposals.

For the reasons set forth in the analysis of Request No. 1, the Court denies Dean Foods' request to compel production of documents related to plants other than the Rockford, Peoria, and Dubuque plants. With respect to those three plants, Prairie Farms indicates that it has already provided the requested information in response to the CID. The Court, therefore, directs Prairie Farms to produce information that updates the responsive information provided to the CID to cover the time from the date of the response to the CID to December 31, 2010. The Court finds that such a response is sufficient for Dean Foods without being unduly burdensome to Prairie Farms. The Motion with respect to Request No. 6 is otherwise denied.

Request No. 7

7. Documents sufficient to show, by year, all assets that you have owned or leased during the relevant period used to haul or transport to your customers fluid milk processed at the Milk Processing Plants identified in response to Request 1, and provide all documents that identify, contain or describe the contractual arrangements for such transport that you have had in place at any time during the relevant period.

For the reasons set forth in the analysis of Request No. 1, the Court denies Dean Foods' request to compel production of documents related to plants other than the Rockford, Peoria, and Dubuque plants. With respect

to those three plants, Prairie Farms states that is it willing to provide a fleet list for the three plants.  <u>Objection Letter</u>, at 7.  Prairie Farms is directed to provide the current fleet list.  The Court finds that such a response is sufficient for Dean Foods without being unduly burdensome to Prairie Farms.  The Motion with respect to Request No. 6 is otherwise denied.

<u>Request No. 8</u>

8.     All documents that identify, describe, analyze or discuss actual or potential competition with Dean Foods, Foremost Farms, or any other fluid milk processors with respect to sales of fluid milk to customers in Wisconsin, the Upper Peninsula of Michigan, and Northern Illinois, including without limitation, bid-related documents, presentations and related communications with customers or potential customers, and documents that compare, contrast or assess the strengths and weaknesses of such suppliers or otherwise include or reflect a competitive analysis.

Prairie Farms objects, in part, on the grounds that it already has provided documents regarding competition with fluid milk producers in the Market, and sales efforts from the Peoria, Rockford, and Dubuque plants that extended outside of the Market.  Prairie Farms is directed to update the responsive information provided pursuant to the CID to cover the time from the date of the response to the CID to December 31, 2010.  The Court finds that such a response is sufficient for Dean Foods without being unduly burdensome to Prairie Farms.  The Motion with respect to Request No. 8 is otherwise denied.

<u>Request No. 9</u>

9.     All documents reflecting or relating to communications you have had with any person, including internal communications or communications with other fluid milk processors, distributors, haulers, retail customers, or anyone else, concerning Dean's purchase of the Golden Guernsey and Morning Glory Milk Processing Plants from Foremost on April 1, 2009, specifically including communications regarding the DOJ's investigation of this transaction and the Complaint filed by Plaintiffs on January 22, 2010.

Prairie Farms states that it will produce responsive, non-privileged documents within its possession, custody, or control, if any.  Prairie Farms is directed to do so.  Prairie Farms is directed to include the appropriate description of any documents subject to a claim of privilege in a privilege log prepared in accordance with Fed. R. Civ. P. 45(d)(2)(A).

<u>Request No. 10</u>

10.     All documents that identify, describe, analyze or discuss any inquiry or investigation by the DOJ regarding your acquisition of Turner Dairy Holdings and the Swiss Valley Fluid Milk Processing Plaint in Dubuque, Iowa, including without limitation, all communications with and documents submitted to or received from the DOJ or any state Attorney General's office concerning either acquisition.

Prairie Farms objects to the request regarding Turner Dairy Holdings because the plants purchased in that transaction were in Arkansas, Tennessee and Kentucky.  The Court agrees that this transaction is irrelevant.  Prairie Farms agrees to produce responsive, non-privileged documents within its possession, custody, or control, if any, with respect to

the Swiss Valley acquisition except for documents that have already been

provided to Dean Foods regarding Prairie Farms' communications with the

DOJ. Prairie Farms is directed to include any such responsive non-

privileged documents regarding the Swiss Valley transaction. Prairie

Farms is directed to include the appropriate description of any documents

subject to a claim of privilege in a privilege log prepared in accordance with

Fed. R. Civ. P. 45(d)(2)(A). The Court finds that such a response is

sufficient for Dean Foods without being unduly burdensome to Prairie

Farms. The Motion with respect to Request No. 10 is otherwise denied.

<u>Request No. 11</u>

>    11.    All documents that describe, analyze or discuss the
> competitive impact or effect of your acquisition of the Swiss
> Valley Fluid Milk Processing Plant in Dubuque, Iowa, including
> without limitation documents that provide support for the
> representation made by your company's counsel, Ms. Teresa
> Bonder, in her May 13, 2009 letter to DOJ that the acquisition
> "will increase competition in Wisconsin by giving PFD the
> capacity and geographic reach to compete for retail and school
> business using a more efficient, multi-plant network," "will assist
> PFD in making inroads further north into Wisconsin," and will
> enable your company "to use Dubuque's current excess
> capacity to increase output to customers in Wisconsin, Iowa,
> and Illinois."[3]

Prairie Farms responds that it has no responsive non-privileged

documents in its possession, custody or control. Prairie Farms is directed

to include the appropriate description of any documents subject to a claim

---

[3]The term PFD refers to Prairie Farms.

of privilege in a privilege log prepared in accordance with Fed. R. Civ. P.

45((d)(2)(A).  The Motion with respect to Request No. 11 is otherwise

denied.

Request No. 12

12.    All documents that contain, analyze, discuss or
provide support for the statement in your 2009 annual report
that the acquisition of Swiss Valley Fluid Milk Processing Plant
in Dubuque, IA, creates "an opportunity to grow geographically
into Wisconsin and Minnesota."

Prairie Farms responds that it has no responsive non-privileged

documents in its possession, custody or control.  Prairie Farms is directed

to include the appropriate description of any document subject to a claim of

privilege in a privilege log prepared in accordance with Fed. R. Civ. P.

45((d)(2)(A).  The Motion with respect to Request No. 12 is otherwise

denied.

Request No. 13

13.    All documents that contain, analyze, or discuss your
company's strategies and efforts to build, purchase, lease, or
expand any assets related to the processing, distribution or
sale of fluid milk in Michigan since January 2000, including
without limitation documents that compare, contrast or assess
the strengths and weaknesses of other fluid milk processors
serving Michigan.

Prairie Farms responds that it has no responsive non-privileged

documents in its possession, custody or control.  Prairie Farms is directed

to include the appropriate description of any document subject to a claim of

privilege in a privilege log prepared in accordance with Fed. R. Civ. P. 45((d)(2)(A). The Motion with respect to Request No. 13 is otherwise denied.

<u>Request No. 14</u>

14. All documents that describe, analyze or discuss any plans or proposals, whether formal or informal, by your company to build a Fluid Milk Processing Plant in the States of Illinois Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota or Wisconsin.

For the reasons set forth in the analysis of Request No. 1, the Court denies Dean Foods' request to compel production of documents related to plans or proposals to build plants more than 200 miles from the Market. Prairie Farms is directed to produce non-privileged documents that reflect plans to build fluid milk processing plants within the Market, or within 200 miles of the Market. The Court finds that such a response is sufficient for Dean Foods without being unduly burdensome to Prairie Farms. Prairie Farms states that it does not have responsive, non-privileged documents regarding plans or proposals to build plants in Wisconsin, Illinois or Michigan. Prairie Farms is directed to include the appropriate description of any document subject to a claim of privilege in a privilege log prepared in accordance with Fed. R. Civ. P. 45((d)(2)(A). The Motion with respect to Request No. 14 is otherwise denied.

Request No. 15

15.    All documents that identify, describe, analyze or discuss any potential acquisition, joint venture or other business alliance or affiliation involving your company and Foremost Farms or any other fluid milk processor located in the States of Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota or Wisconsin.

For the reasons set forth in the analysis of Request No. 1, the Court denies Dean Foods' request to compel production of documents related to potential acquisitions, joint ventures or other business alliances or affiliations that are outside of the Market.  Prairie Farms further states that it has already provided information regarding potential acquisitions, joint ventures or other business alliances or affiliations that are within the Market.   Prairie Farms is directed to produce information that updates the information already provided from the date of the response to the CID up to December 31, 2010.  The Court finds that such a response is sufficient for Dean Foods without being unduly burdensome to Prairie Farms.  The Motion with respect to Request No. 15 is otherwise denied.

Request No. 16

16.    All documents that describe, analyze or discuss the 2010 decision by Wal-mart to reduce the volume of fluid milk it purchases from your company, including without limitation any plans or proposals, whether formal or informal, you are considering to respond to this lost volume.

Prairie Farms objects because this request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. The Court agrees. Wal-mart's decision to buy or not buy milk from Prairie Farms seems to have no connection to the Antitrust Action or competition in the sale of milk in the Market. The Motion with respect to Request No. 16 is denied.

## CONCLUSION

Prairie Farms is directed to make its response by March 31, 2011. In making its response, Prairie Farms may make the appropriate designations to subject any document to the protective order in place in the Antitrust Action. Dean Foods Memorandum, Pugh Declaration, Exhibit C, Protective Order entered May 20, 2010. With respect to any claim of privilege, Prairie Farms is directed to include the appropriate description of any document subject to a claim of privilege in a privilege log prepared in accordance with Fed. R. Civ. P. 45((d)(2)(A).

Prairie Farms asks for attorney fees and expenses incurred in connection with responding to this Motion. A court must impose a sanction, which may include attorney fees, if the party issuing the subpoena fails to take reasonable steps to avoid imposing undue burden or expense on the party subject to the subpoena. Fed. R. Civ. P. 45(c)(1). In this case, the Court determines that no award is appropriate. Prairie Farms

is a milk supplier that is active in the Market. As such, Dean Foods had a good faith basis to issue the Subpoena to Prairie Farms. The Court has concluded that the Subpoena sought information from too broad a geographical area, but the Court also concludes that the Subpoena was not sufficiently burdensome to merit issuing a monetary sanction.

WHEREFORE, Movant Dean Foods Company's Motion to Compel Compliance with Subpoena Duces Tecum (d/e 3) is ALLOWED in part and DENIED in part. Prairie Farms is directed to respond to the Subpoena in the manner set forth in this Opinion. This miscellaneous proceeding to enforce this subpoena is CLOSED.

ENTER: March 7, 2011


_____*s/ Byron G. Cudmore*_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE